IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BERRY MOORE,

        Plaintiff,

   v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.
_____/

No.  CIV.S-05-0757 DAD

ORDER

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is reversed and this matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

Plaintiff Berry Moore applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act").

1

(Transcript (Tr.) at 62-64.)  The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 52-55, 58-61.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on January 8, 2003.  (Tr. at 28-49.) In a decision issued on February 18, 2003, the ALJ determined that plaintiff was not disabled as defined in the Social Security Act. (Tr. at 10-21.)  The Appeals Council declined review of the ALJ's decision on April 10, 2003.  (Tr. at 4-5.)  After plaintiff initially filed a complaint in this court, the Commissioner agreed to a voluntary remand.  (Tr. at 455-470, 444-448.)  The remand order filed in this court stipulated that the ALJ should:

> 1) re-evaluate the opinion of Dr. McAuley [Moore's treating physician] and if he rejects that opinion, or a portion of that opinion, he should provide specific, legitimate reasons for doing so;
>
> 2) consult a vocational expert to assist with determining the remaining occupational base after considering Moore's limitations; and
>
> 3) otherwise develop the record as needed and fully articulate the basis for the decision.

(Tr. at 444-45.)

Pursuant to the remand order, a second administrative hearing was held on October 5, 2004, before the same ALJ.  (Tr. at 590-630.)  In a decision issued on November 18, 2004, the ALJ again determined that plaintiff was not disabled.  (Tr. at 436.)  The ALJ entered the following findings:

/////

/////

2

1. The claimant met the disability insured status requirements of the Act on June 23, 2000, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since June 23, 2000.

3. The medical evidence establishes that the claimant has "severe" cervical and lumbar degenerative disk disease; myofascial pain syndrome; diabetes mellitus; hypertension; and right eye blindness, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, subpart P, Regulations No. 4.

4. The claimant's testimony cannot be entirely credited for the above stated reasons.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting or carrying more than 10 pounds frequently or 20 pounds occasionally or more than occasional crouching, crawling or stooping, or more than occasional use of the right upper extremity or jobs requiring more than light perception with the right eye (20 CFR § 404.1545).

6. The claimant is unable to perform his past relevant work.

7. The claimant's residual functional capacity for the full range of light work is reduced by the limitation indicated above

8. The claimant is 46 years old, which is defined as a younger individual (20 CFR § 404.1563).

3

>    9.  The claimant has a high school education (20 CFR § 404.1564).
>
>    10. The claimant does not have any acquired work skills which are transferable to the skilled or semi skilled work functions of other work (20 CFR § 404.1568).
>
>    11. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the Medical-Vocational Guidelines as a framework for the decisionmaking, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: mill stenciler, woodwork mechanist, blends tank helper, cashier, and final assembler/optical goods.
>
>    12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. at 435-436.) The Appeals Council declined review of the ALJ's decision on March 15, 2005. (Tr. at 420.) Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on April 19, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770

4

1  F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant
2  evidence as a reasonable mind might accept as adequate to support a
3  conclusion.  <u>Morgan</u>, 169 F.3d at 599; <u>Jones v. Heckler</u>, 760 F.2d 993,
4  995 (9th Cir. 1985) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401
5  (1971)); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir.
6  2003) (Substantial evidence "is more than a mere scintilla but not
7  necessarily a preponderance.")

8       A reviewing court must consider the record as a whole,
9  weighing both the evidence that supports and the evidence that
10 detracts from the ALJ's conclusion.  <u>See</u> <u>Jones</u>, 760 F.2d at 995.  The
11 court may not affirm the ALJ's decision simply by isolating a
12 specific quantum of supporting evidence.  <u>Id.</u>; <u>see also</u> <u>Hammock v.</u>
13 <u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence
14 supports the administrative findings, or if there is conflicting
15 evidence supporting a finding of either disability or nondisability,
16 the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d
17 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
18 improper legal standard was applied in weighing the evidence, <u>see</u>
19 <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

20      In determining whether or not a claimant is disabled, the
21 ALJ should apply the five-step sequential evaluation process
22 established under Title 20 of the Code of Federal Regulations,
23 Sections 404.1520 and 416.920.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137,
24 140-42 (1987).  This five-step process can be summarized as follows:
25 /////
26 /////

>Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
>Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three arguments in his motion for summary judgment. First, plaintiff argues that the ALJ's hypothetical question to the vocational expert was flawed in that it did not accurately reflect the ALJ's findings with respect to plaintiff's residual functional capacity as reflected elsewhere in the decision. Second, plaintiff argues that the ALJ failed to properly re-evaluate the opinion of plaintiff's treating physician as

6

1  required by the remand order.  Finally, plaintiff contends that the
2  ALJ erred in evaluating plaintiff's testimony regarding the severity
3  of his symptoms and the resulting limitations those symptoms place
4  upon him.  The court addresses plaintiff's arguments below, although
5  not in the order plaintiff has presented them.

6       Plaintiff contends that the ALJ improperly rejected the
7  opinion of his treating physician, Robert McAuley, M.D.  It is well
8  established that the medical opinion of a treating physician is
9  entitled to special weight.  See Fair v. Bowen, 885. F.2d 597, 604-05
10 (9th Cir. 1989); Embrey, 849 F.2d at 421.  "Because treating
11 physicians are employed to cure and thus have a greater opportunity
12 to know and observe the patient as an individual, their opinions are
13 given greater weight than the opinions of other physicians."  Smolen
14 v. Chater, 80 F.32 1273, 1285 (9th Cir. 1996).  An ALJ may, however,
15 reject the controverted opinions of a treating physician so long as
16 he or she makes "findings setting forth specific, legitimate reasons
17 for doing so that are based on substantial evidence in the record."
18 Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

19      Here, treating physician Dr. McAuley opined, on a form
20 completed June 17, 2002, that due to his shoulder impingement and low
21 back pain plaintiff is limited to: walking for 45 minutes
22 uninterrupted; standing or sitting for 1 to 2 hours uninterrupted or
23 2 to 4 hours standing or sitting in total; and carrying less than 5
24 /////
25 /////
26 /////

7

pounds frequently and up to 50 pounds occasionally. (Tr. at 493-96.)[1] Based upon this assessment plaintiff's treating physician opined that plaintiff had the residual functional capacity to perform a narrow range of light work. (Tr. at 496.)

The ALJ rejected this opinion from plaintiff's treating physician, finding the limitations assessed to be excessive. (Tr. at 434.) The ALJ based his rejection of the treating physician's opinion on the findings "reported by several examining medical sources." (Id.) In this regard, the record reflects that plaintiff was examined on July 20, 2004, by Rebecca Jordan, M.D., a consulting neurologist. (Tr. 569-75.) Dr. Jordan provided her impressions and completed a residual functional capacity assessment, finding plaintiff's ability to stand or walk to be "estimated at 6 hours with customary breaks" and that "[s]itting is likewise estimated at 6 hours with customary breaks." (Tr. at 575.) Dr. Jordan confirmed that due to his shoulder and back conditions plaintiff is limited to carrying 10 pounds frequently and 20 pounds occasionally. (Id.) Finally, Dr. Jordan found that plaintiff suffers from limited vision, with his right eye limited to light perception only. (Id.) The ALJ purported to adopt these assessed work-related limitations as well-supported by the record. (Tr. at 433-34.) In addition, the record reflects that Dr. Calvin Nash, an orthopedic surgeon, examined

---

[1] In the same assessment plaintiff's treating physician also rendered the opinion that plaintiff was also restricted in climbing and bending, did not require rest periods during the day and possessed the physical capacity to work an 8 hour day 5 days per week despite his pain. (Tr. at 494-96.) Finally, Dr. McAuley reported that plaintiff's condition was now stable. (Id. at 495.)

8

plaintiff on March 1, 2002.  (Tr. at 359-61.)  Dr. Nash found plaintiff to have medical conditions with respect to his right wrist, right shoulder and neck and low back pain associated with mild disc bulges.  (Tr. at 361.)  Dr. Nash assessed plaintiff as having the capacity to perform light duty work with a 20 pound weight lift limit and "no restriction as far as sitting, standing, or walking is concerned."  (Tr. at 361.)  Finally, Dr. Nash opined that plaintiff should avoid work involving overhead use of his right arm. (Id.)

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Accordingly, the court must defer to the ALJ's decision to reject the opinion of a treating physician in favor of the conflicting opinion of an examining physician if the ALJ sets forth specific legitimate reasons based on substantial evidence in the record.  Connett v. Barnhart, 340 F.3d 871, 874-75 (9th Cir. 2003); Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  While exceptionally brief, the ALJ nonetheless adequately stated specific legitimate reasons based on substantial evidence in the record to reject the opinion of the treating physician on the extent of plaintiff's limitations in favor of the opinions of other examining physicians. Finally, it is worth noting that the opinions of the examining physicians, Dr Jordan and Dr. Nash, regarding plaintiff's limitations

/////

/////

did not differ dramatically from that of the treating physician.[2] The ALJ accurately found the examining physicians' findings well-supported by the record. The ALJ was entitled to rely on the examining physician opinions as he did.[3]

Turning next to plaintiff's credibility argument, it is well-established that the determination of credibility is a function of the ALJ, acting on behalf of the Commissioner. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. Morgan, 169 F.3d at 599. In

---

[2] The ALJ also generally observed that at points in time during treatment, Dr. McAuley reported plaintiff as enjoying good improvement. (Tr. at 431.) Although not specifically noted by the ALJ, following his examination of plaintiff on April 2, 2002, Dr. McAuley opined that plaintiff was capable of light work. (Tr. at 390.) This opinion would appear consistent with the opinion of the examining physicians and at least somewhat inconsistent with the treating physician's June 17, 2002, assessment that plaintiff was limited to a narrow range of light work. (Tr. at 496.)

[3] Plaintiff takes issue with the ALJ's reliance on plaintiff's "excellent motor strength and particularly his excellent grip strength" as a basis for rejecting the treating physician's opinion that plaintiff can lift only 5 pounds frequently. (See Tr. at 434.) Plaintiff argues that the motor and grip strength assessments are not relevant because Moore's limitation is due to a back injury. The court agrees. Obviously grip strength has little to do with one's ability to lift a particular weight. Nonetheless, the medical evidence of record supports the ALJ's conclusion that plaintiff is capable of carrying 10 pounds frequently and 20 pounds occasionally. (See Tr. at 354, 361, 575.) Further, the ALJ properly acknowledged plaintiff's limitations attributable to his back condition, noting that "[plaintiff's] decreased lumbar flexion and other abnormalities affecting his lower back would limit him to [lifting] 10 pounds frequently to 20 pounds occasionally." (Tr. at 434.)

10

evaluating a claimant's subjective testimony regarding pain and severity of his or her symptoms an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen, 80 F.3d at 1285. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. See Fair, 885 F.2d at 604 n.5.

Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller, 770 F.2d at 848). Once a claimant has presented evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the testimony is unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722; Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). Rather, "the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." Light, 119 F.3d at 792. See also Reddick, 157 F.3d at 722.

In his decision following the administrative hearing after remand, the ALJ concluded that plaintiff's testimony could not be entirely credited. (Tr. at 435.) The only findings in support of this conclusion were stated by the ALJ in his decision as follows:

> The undersigned simply cannot credit the claimant's testimony to the effect that he can walk only a block, stand 45 to 60 minutes, sit

>           for an hour or that he is otherwise essentially
>           non-functional because of pain.  Rather, his
>           testimony indicated that he engages in walking
>           and other exercises, drives, etcetera.  Likewise,
>           his testimony of drowsiness has not been shown to
>           impose a significant limitation on his ability to
>           perform full-time work activity, reinforced by
>           the fact that he continues to drive for several
>           hours a week - an activity which would obviously
>           require the ability for sustained attention and
>           concentration.

(Tr. at 434.)

A review of the record reveals plaintiff testified at the administrative hearing that: he drives a total of approximately 4 hours a week and drives less than an hour at one time; his medication causes drowsiness, dizziness, lightheadedness and nausea; he is able to walk "maybe a block or so" or up to a quarter of a mile if feeling well; he can stand for 45 minutes to an hour; he can sit for up to an hour before having to change position; he does not do house chores, occasionally cooks breakfast, and does stretching exercises for his neck and back as advised by his doctor.  (Tr. at 603-05.)

The ALJ found that ability to drive a total of 4 hours over a week is inconsistent with plaintiff's claims because driving requires that plaintiff maintain a level of concentration sufficient for light work.  (Tr. at 434.)  The ALJ found that plaintiff's testimony that he can walk only a block, stand only 45 to 60 minutes and sit for only an hour were inconsistent with plaintiff's own testimony that he walks up to a quarter mile, does back and neck exercises, drives and engages in other daily activities.  (Id.)  The arguable inconsistencies in plaintiff's testimony noted by the ALJ are not significant when considered individually.  On the other hand,

the ALJ merely found that plaintiff's testimony could not be "entirely credited." (Tr. at 435.) In essence, the ALJ merely found based upon the alleged inconsistencies that plaintiff had something of a propensity to exaggerate his limitations.

The court is fully aware that as a general matter social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F. 3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") However, the question here is one of whether plaintiff's testimony was entirely credible. The ALJ properly employed ordinary techniques of credibility evaluation and provided sufficient, albeit brief, reasons for finding plaintiff's testimony not entirely credible.[4]

Finally, plaintiff argues that the hypothetical question posed to the vocational expert was flawed. An ALJ's hypothetical

---

[4] It should be noted that in his first decision, the ALJ also noted that plaintiff's testimony is contradicted by medical expert testimony. (Tr. at 17.) The ALJ noted that most treating and examining physicians have indicated that claimant has "the ability to do substantially more than reflected in his report of daily activities." (Id.) In fact, the record establishes that plaintiff's own treating physician opined that plaintiff could work an 8 hour day 5 days a week. (Tr. at 495.) Moreover, there is substantial medical evidence that plaintiff can sit or stand for 6 hours with normal breaks. (Tr. at 361, 575.) All of this evidence is inconsistent to some degree with plaintiff's own testimony regarding his limitations.

question must accurately set out all of the limitations and restrictions of the claimant.  See Magallenes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see also Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

The court agrees with plaintiff that the ALJ's hypothetical question posed to the vocational expert was inconsistent with the findings in the ALJ's decision.  In the body of his decision, the ALJ found plaintiff limited to "occasional pushing and pulling with the right upper extremity; limited reaching with the right upper extremity."  (Tr. at 433.)  In his enumerated findings at the conclusion of his decision, the ALJ found plaintiff unable to engage in "more than occasional use of the right upper extremity."  (Tr. at 435.)  At the administrative hearing, the ALJ told the vocational expert (VE) to assume an individual who is "limited to overhead reaching occasionally with the right hand".  (Tr. at 614.)  To further complicate matters, an exchange between the ALJ and VE during the administrative hearing at least suggests that the ALJ understood his question to include the additional limitations in "reaching and gripping."  (Tr. at 616-17.)  However, this is far from clear in the record.  In short, not only is it unclear exactly what the ALJ found with respect to plaintiff's right upper extremity limitations, but the scope of the hypothetical question to the VE is also difficult to determine.  Therefore, the court can only find that

the hypothetical question did not accurately set out all of the limitations and restrictions of plaintiff.[5]  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Because neither the hypothetical nor the answer properly set forth all of Gallant's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").  Reversal is required for this reason.

In light of this error, the appropriate remedy must be determined.  Remand for further proceedings is necessary where, as here, the finding of nondisability was based on a flawed hypothetical and it is not otherwise apparent from the record that plaintiff is disabled and entitled to benefits.  See Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  Therefore, and unfortunately, this matter will be once again remanded with the direction that the ALJ clarify his findings with respect to plaintiff's right upper extremity impairment and obtain vocational expert opinion based on an accurate assessment of plaintiff's restrictions.

/////

/////

/////

---

[5] The court has examined the medical evidence in an attempt to determine exactly what the ALJ intended to find with respect to plaintiff's right upper extremity.  However, there is evidence suggesting that plaintiff is limited to overhead reaching (Tr. at 360-61, 390, 575) and a nearly equal amount of evidence suggesting that plaintiff is limited to a greater extent in his right hand and arm (Tr. at 168, 205).  Thus, the court's own examination of the medical records was of little assistance in this regard.

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1. Plaintiff's motion for summary judgment and/or remand is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner is reversed and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: September 29, 2006.

*/s/ Dale A. Drozd*

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:im:th
Ddad1\orders.socsec\moore0757.order

16